*Fairfield*,
June, 1841.

STERLING *against* PEET and others.

Sterling
*v.*
Peet.

| 14 | 245 |
| 58 | 117 |
| 14 | 245 |
| 61 | 405 |

A covenant, signed and sealed, by one person, in behalf of others, will bind him, unless he can show a clear intent that it should not, or unless personal responsibility is expressly excluded.

Therefore, where the grantors in a deed of land were the warden and burgesses of the borough of *B*, and described themselves as such in the deed; the premises were part of a highway in that borough, which the grantors were authorized by statute to sell, for the purpose of purchasing other highways; the consideration paid by the grantee was received for the purpose of purchasing a new highway in the borough; which authority and use were stated in the deed; the grantors, for themselves and their successors in said offices, in said official capacities, then covenanted with the grantee, that the grantors, as warden and burgesses aforesaid, had good right to sell, and bound themselves and their successors in said offices, forever to warrant and defend the premises; in an action by the grantee, after eviction, against the grantors, upon these covenants, it was held, that although the grantors acted in the sale as public agents, and had no personal interest in such sale, yet as they had no authority from the borough or the state to insert the covenants, and the terms used were sufficient to bind themselves, they were personally responsible.

Where an action of trespass *qu. cl. fr.* was brought against the grantee of land, by a person claiming title; the title was distinctly put in issue, and a verdict was found and judgment rendered against such grantee; who thereupon surrendered the possession of the land to the plaintiff in such action, without waiting for further proceedings; it was held, that an eviction of the grantee was thereby shewn.

In this state, the settled rule of damages, in an action upon the covenant of seisin in a deed, is the consideration money and the interest thereon; and upon the covenant of warranty, the value of the land, at the time of eviction.

In an action on both covenants, the plaintiff was allowed to take judgment upon either, at his election, the damages being estimated upon these principles.

This was an action on the covenants in a deed of land.

There were three counts in the declaration; but it will be sufficient to state the third only, that being the most comprehensive. In this count it was alleged, That on the 7th of *December*, 1808, the defendants, [together with other persons since deceased] by their deed of that date, by them duly executed, acknowledged and recorded, for the consideration of 146 dollars, bargained and sold to the plaintiff a certain piece of land, lying in the borough of *Bridgeport*, [describing it,] containing $78\frac{65}{100}$ rods; to hold to him, the plaintiff, his heirs and assigns forever; therein covenanting, among other things, to warrant and defend the premises to the plaintiff, his heirs and assigns, against the lawful claims of all persons whatsoever: that on said 7th of *December*, the plaintiff, in virtue of said conveyance, entered upon the premises, and became

possessed thereof, and ought to hold and enjoy the same, as an indefeasible estate in fee-simple, according to the covenants aforesaid; but the defendants have not kept their said covenants, but have broken the same, for that neither they, nor either of them, were the owners of said land, nor have they, or either of them, warranted and defended the premises to the plaintiff, though often requested so to do: that before the county court of *Fairfield* county, holden on the second *Tuesday* of *August*, 1835, *Elijah Burritt, Maria Sherman*, &c., being the rightful owners of the premises, brought their action of trespass against the plaintiff, therein alleging, that they were seised and possessed of a certain part of the premises, [describing such part,] and that the plaintiff, (then defendant,) on the 1st of *August*, 1832, entered upon said tract of land, trod down and destroyed the herbage, &c.; that said action, by legal removes, came before the superior court, holden in *Fairfield* county, in *April*, 1838, when the plaintiff (then defendant) pleaded, that said acts were done upon a certain part of said land, being $9\frac{1}{2}$ rods in quantity, [describing it] and that he, the then defendant, when said acts were done, had good right to do the same, for that he was well seised of said part of the premises in his own right, in fee-simple; to which the then plaintiffs replied, alleging their own title, and denying the right and title of the then defendant, to said part of the premises; on which issue was joined to the jury, who returned a verdict thereon in favour of the then plaintiffs, who thereupon recovered judgment against the then defendant, for the sum of 1 dollar, damages, and 44 dollars, 94 cents, costs of suit, and took out execution therefor in due form of law; and that thereupon the then plaintiffs entered upon said last described premises, as they lawfully might do, and turned the present plaintiff out of the same, and now lawfully hold the same in fee, and have collected of the present plaintiff the sum of 53 dollars, 58 cents, for damages and costs: that in said cause, the present plaintiff lawfully vouched in the present defendants to appear and defend his title to the premises, but they neglected and refused so to do, and he necessarily expended the sum of 200 dollars about the defence thereof: that so the defendants have not kept any of their said covenants, but have broken the same.

The defendants pleaded, that the writing mentioned in the

plaintiff's declaration was not the proper act and deed of the defendants, in their individual capacities; on which issue was joined, and, by agreement, put to the court for trial.

The cause was tried at *Danbury, September* term, 1840, before *Storrs,* J.

The court found the following facts. On the 7th of *December*, 1808, *William Peet*, one of the defendants, was the warden, and the other defendants were the burgesses, of the borough of *Bridgeport*, a borough before that time legally incorporated, by the legislature of this state. In pursuance of the charter of incorporation, (*Stat.* 106. ed. 1808.) the defendants executed and delivered to the plaintiff the following deed: "That we, *William Peet*, warden of the borough of *Bridgeport*, and *Salmon Hubbell, Isaac Hinman, Ezra Gregory, Reuben Tweedy, Aaron Hawley,* and *David Sterling*, burgesses of said borough, by virtue of the statute law of this state in such case made and provided, us empowering to sell highways for the purpose of purchasing other highways, (*a*) and for the consideration of the sum of 146 dollars, received to our full satisfaction of *Daniel Sterling* of said borough, for the purpose of purchasing a new highway in said borough, do give, grant, bargain, sell and confirm unto the said *Daniel Sterling*, one certain piece of land, lying in said borough, and being highway, containing $78\frac{65}{100}$ths rods, and bounded, &c., [describing it;] To have and to hold the above granted and bargained premises, with the privileges and appurtenances thereof, unto him, the said *Daniel Sterling*, his heirs and assigns, forever, to his and their own proper behoof. And also, we, the said warden and burgesses of said borough, do, for ourselves and our successors in said offices, in said official capacities, covenant with the said *Daniel Sterling*, his heirs and assigns, that at and until the ensealing of these presents, as warden and burgesses aforesaid, we have good right to bargain and sell the same premises, in manner and form as is above written; and that the same is free of all incumbrances whatsoever. And furthermore, we, the said warden and

(*a*) By the 7th section of the Act incorporating the borough of *Bridgeport*, it is provided, "That the warden and burgesses be, and they are hereby empowered to lay out new highways, &c., and to exchange highways for highways, or to sell highways for the purpose of purchasing other highways," &c. *Stat.* 108. *ed.* 1808.

burgesses of said borough, do, by these presents, bind our-
selves and our successors in said offices, forever, to warrant
and defend the above bargained premises to him, the said
*Daniel Sterling*, his heirs and assigns, against all claims and
demands whatsoever.   In witness whereof, we have hereunto
set our hands and seals, the 7th day of *December, A. D.*
1808.

[Witnesses' names.]                   *William Peet.*   (L. S.)

                                    *Salmon Hubbell.*   (L. S.)

                [Names of the other grantors and seals.]

This deed was duly witnessed, and was acknowledged as
the free act and deed of the grantors.   The land therein des-
cribed, and purporting to be conveyed thereby, was an old
highway; and was so sold and conveyed, by said warden and
burgesses, for the purpose of purchasing other highways;
and the sum specified in the deed, as the consideration of the
conveyance, was in fact appropriated by them, for that object.
A part of the land described in the deed, in quantity $9\frac{1}{2}$ rods,
being a part of such old highway, was situated, at the time
of giving said deed, in front of, and adjoining the land of one
*Crofut.*   The plaintiff, immediately after the execution of
said deed, entered upon the land therein described, and occu-
pied it until some time in the year 1838.

In *August,* 1835, *Elijah Burritt* and others brought their
action of trespass *quare clausum fregit* against the plaintiff,
declaring as in the third count of the present declaration is
alleged.   The issue, verdict and judgment, are also therein
correctly stated.   The land, in quantity $9\frac{1}{2}$ rods, mentioned in
the plea to said action of trespass, is part of the tract described
in the deed of said warden and burgesses, and is the same
land, which, at the date thereof, was situated in front of, and
adjoining the land of said *Crofut;* and the plaintiffs in the
action of trespass derived their title from said *Crofut.*  During
the pendency of the action of trespass, the defendant therein
prayed out a citation, bearing date, 27th of *September,* 1836,
signed by the clerk of the court, and directed to an officer
for service, summoning the present defendants and the war-
den, burgesses and freemen of the borough of *Bridgeport* to
appear before the court, and defend the said *Daniel Sterling*
in said action; which was duly served upon the defendants;
but they did not appear.   After the trial of the action of tres-

pass before the superior court, *viz.* on the 1st of *May*, 1838, the present plaintiff paid the damages and costs recovered against him therein, with the officer's fees upon the execution, and thereupon surrendered to the plaintiffs in that action the possession of said tract of $9\frac{1}{2}$ rods of land.

*Fairfield,*
June, 1841.

Sterling
*v.*
Peet.

Upon these facts the following questions were reserved for the consideration and advice of this court : 1. Are the defendants, or any of them, personally liable upon the covenants in said deed of the 7th *December*, 1808 ?   2. If the defendants be thus liable, what amount of damages ought the plaintiff to recover ?

*Bissell* and *Loomis,* for the plaintiff, contended, 1. That the defendants were personally liable on the covenants in their deed.

In the first place, the deed, on the face of it, does not purport to bind the borough.   It is not executed in the corporate name, or under the corporate seal.   *The Savings Bank* v. *Davis* & al. 8 *Conn. Rep.* 192.

Secondly, the borough had no title to the land.   The fee of this highway belonged to the owner of the adjoining land. So far as the charter of the borough authorized an alienation of the fee, it is inoperative as a violation of common right. *Berlin* v. *New Britain,* 9 *Conn. Rep.* 175.

Thirdly, a court of competent jurisdiction has decided that the deed conveyed no title, and that no power or authority was vested in the defendants to convey.

Fourthly, the defendants could not bind their *successors.*

2. That as the grantors did not, and could not, bind those for whom they attempted to act, they became personally bound.   *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 495. 613, 14.   *Coe* v. *Talcott,* 5 *Day,* 88.   *Belden* v. *Seymour,* 8 *Conn. Rep.* 19. 24.   *Sumner* v. *Williams,* 8 *Mass. Rep.* 162.   209, 10, 11. *Appleton* v. *Binks,* 5 *East,* 148.

3. That the objection that it is apparent on the face of the deed, that the grantors did not *intend* to bind themselves personally, is of no avail.

For, in the first place, the same objection might have been made in nearly all the cases above cited.   It was urged in *Sumner* v. *Williams,* 8 *Mass. Rep.* 195.

Secondly, the intention of both parties is to be regarded.

It certainly was not the intention of the parties that void covenants should be given, or a deed without covenants. The alternative is presented of declaring the covenants wholly void and ineffectual, or giving them operation against the defendants.

Thirdly, the deed is to be construed most strongly against the grantors.

Fourthly, the words " as warden and burgesses" &c., are merely *descriptio personarun.*

4. That the rule of damages is the consideration paid and the interest. The voucher entitles the plaintiff to his costs and expenses. *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 496. 516. *Sumner* v. *Williams,* 8 *Mass. Rep.* 162. 222.

*Booth* and *Dutton,* for the defendants, contended, 1. That the defendants are not personally liable. For, in the first place, they acted professedly *as agents.* This is apparent from the deed. If liable at all, they must be so, in a different form of action. The evidence does not sustain this declaration. *Ballou* v. *Talbot,* 16 *Mass. Rep.* 416. *Long* v. *Colburn,* 11 *Mass. Rep.* 97. *Harper* v. *Little,* 2 *Greenl.* 14.

Secondly, they were *public* agents, deriving their authority from the legislature of the state. Such agents are never liable, unless they *expressly* bind themselves. *Hodgson* v. *Dexter,* 1 *Cranch* 345. *Unwin* v. *Wolseley,* 1 *Term Rep.* 674. *Adams* v. *Whittlesey,* 3 *Conn. Rep.* 560. *Macbeath* v. *Haldimand,* 1 *Term Rep.* 172. *Jones* v. *Le Tombe,* 3 *Dal.* 384. *Walker* v. *Swartwout,* 12 *Johns. Rep.* 444. *Brown* v. *Austin,* 1 *Mass. Rep.* 208. It is a mere question of *intent.* 2 *Kent's Com.* 633. 10 *Conn. Rep.* 338. per *Daggett,* J. *Thayer* v. *Wendell,* 1 *Gall.* 40. *Olney* v. *Wicks,* 18 *Johns. Rep.* 122. Even an express promise will not bind, where the business is of a public nature. A covenant for the public is a mere pledge of public faith.

Thirdly, want of authority does not render a public agent liable. One party is presumed to have as much knowledge of the power of the agent as the other. The acts of a legislature or a court of competent jurisdiction, are presumed to be valid. *Perry* v. *Hyde,* 10 *Conn. Rep.* 329.

2. That if the plaintiff is entitled to recover at all, he is only entitled to the consideration money. The use of the property is in lieu of interest.

WILLIAMS, Ch. J.   The questions reserved for the consid-
eration of the court, are, whether the defendants are per-
sonally liable upon the covenants of warranty in the deed;
and if so, what damages the plaintiff ought to recover.

In the deed, the defendants are described as warden and
burgesses of the borough of *Bridgeport,* and convey the prem-
ises by virtue of a statute law of the state empowering them
to sell highways.   The covenants are in the usual form in
deeds of warranty; and the grantors bind themselves and
their successors, in their official capacity; and covenant, that,
as warden and burgesses aforesaid, they have good right to
bargain and sell the same; and that for themselves and their
successors, they will warrant and defend.

The right of the defendants to sell lands owned by the bor-
ough for new highways, is admitted; but the plaintiff claims,
that as they have warranted the title, without any authority,
they must be personally responsible.   The defendants con-
tend, that the authority under which they claimed to act,
appears upon the deed, and that they acted as agents of the
public officially, and this was known to the plaintiff, and so
they are not bound personally.   Many cases have been cited,
which will not require a particular examination in this case.

As the defendants have shewn no law or vote authorizing
them to covenant for the title of the land, they cannot place
themselves on the ground of those who were acting within
the scope of their authority, and therefore bound their princi-
pal; and as they have entered into special covenants, that
class of cases depending upon simple contracts, particularly
implied ones, will not require examination.   On the other
hand, we must consider these defendants as public officers, as
it has been decided select-men are public officers.   *Tomlin-
son* v. *Leavenworth,* 2 *Conn. Rep.* 292.   We dismiss, threfore,
the case of private agents, as not necessarily governing this.

The case presented, then, is one of public agents, by cove-
nants under their own hands and seals, binding themselves to
do certain acts, to which they could not bind any one else,
having no authority from any one else to do these acts.   The
borough gave them no power, except such as was conferred
upon them by their office.   The statute gave them no power

but a power to sell.   Whom, then, could they expect to bind, but themselves?

It is said, that as it appears they were acting for the public, it cannot be presumed, that they meant to bind themselves; and that this is further shewn from the fact, that they say they bind themselves and their *successors*, in their *official capacity.* It is certain, that a covenant, though made in behalf of others, when signed and sealed by the defendants, may bind them. *Appleton* v. *Binks,* 5 *East* 148.   And it must bind them, unless they can shew a clear intent that it should not, as was shewn in the case of *Hodgson* v. *Dexter,* 1 *Cranch* 345.; or unless personal responsibility is expressly excluded, as was the case in *Thayer* v. *Wendell,* 1 *Gall.* 48. and in *Perry* v. *Hyde,* 10 *Conn. Rep.* 329.   That personal responsibility is here expressly excluded, is not pretended.

But it is claimed, that the whole frame of the deed shows a different intent.   First, the consideration did not accrue to them.   Then they claim to act *officially,* and to bind themselves, and not their heirs, but their *successors.*   It is true, that the consideration did not benefit them.   Neither did it the defendant, in the case cited from *East,* where he covenanted for Lord *Rokeby,* nor in *Pell* v. *Stephens,* where *Pell,* assignee of a bankrupt, promised, that if *S.* would withdraw a distress from the goods of the bankrupt, to pay out of the produce of the sale of the effects, and *S.* complied, but afterwards, the commission was set aside.   *Pell* was held personally liable, both at law and in chancery.   4 *Tyr.* 6.   2 *M. & R.* 334. (8 *Cond. Ch. Rep.* 25.)   And in cases of agency, this is usually, if not always, the case.

But it is said, they do this *officially ;*—they bind themselves and their *successors ;* and that showed they could not have meant to be personally liable.   Whom then, did they mean to bind?   Was it the borough?   There is not a word said importing any obligation upon it in the covenants.   Indeed, the corporation is not alluded to, unless when they say, they bind themselves and their *successors, officially.*   Did they, then, expect, or intend, to bind their successors?   Certainly not, more than themselves; for they bind themselves and their successors, in their official capacity.   We have no more evidence that they meant to bind their successors, than themselves.   There is nothing that shows the intention to bind the

state, under whose laws they claim to sell; for they have no pretence of authority to warrant a title under that law. When, then, we cannot find from the instrument, that there was any other person or body, that they intended to bind, how are the words of the covenant to be avoided ? We certainly must take into consideration the intention of both parties. It seems, indeed, that when the defendants are doing an act in which they have no personal interest, which, they say, they do *officially,* it can hardly be supposed they meant to bind themselves. On the other hand, when so many covenants are inserted, it cannot be supposed but that the parties intended by them something more than a mere release deed. The construction contended for, makes the covenant vain and useless. In such a case, unless the defendants can show a clear and decisive intention to the contrary, we see not why we must not give to the words of this covenant their full effect.

This is not the case of parties acting under apparent authority, which proved, unexpectedly, to be invalid ; as in the case of *Perry* v. *Hyde,* where parties acted under the apparent authority of the county court. It is not the case where a person acts under a vote of a corporation, but there is a secret vice behind the vote. We give no opinion in such a case. Here, nothing appears to lead us to suppose, that the parties were mistaken as to the extent of their powers, unless we are to infer it from the bare fact that the defendants have executed a warranty deed of lands, in a case where they had no personal interest. This may be improbable, but it is not more improbable than that the parties should have entered into solemn covenants, which they should have understood could have no operation whatever, and which were in effect a mere nullity.

Looking, then, at the words of these covenants, and finding them to be such as may bind the defendants ; and looking over the whole deed, and not being able to discover any such plain intent of the parties as will authorize us to say, that something else was intended than these words import; we feel bound to say, that the defendants did assume the responsibility of warranting this title, and must, therefore, be personally liable upon their covenants.

The next question is, as to the rule of damages. This suit

*Fairfield,*
June, 1841.

Sterling
*v.*
Peet.

is brought upon the covenants of seisin and warranty; and in one of the counts, it is claimed, the plaintiff was evicted. What then, is to be the rule of damages? Upon this subject, we need not go into the enquiry, what is the rule in *England,* or our sister states. We consider the rule to have been long since settled in this state, that upon the covenant of seisin, the plaintiff has a right to recover the consideration money, and the interest, and on the covenant of warranty, the value of the land, at the time of eviction. This, says Judge *Swift,* has been the immemorial usage in *Connecticut,* 1 *Sw. Dig.* 673. It was expressly recognized, by the superior court, in *Horsford* v. *Wright, Kir.* 3., and acted upon ever since. *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 516. It is too late, at this time, for the court to give a new construction to contracts, which have been made with reference to a long settled course of decisions, acquiesced in for more than half a century. We think, too, that when the warrantor has been vouched in to defend his title, the costs which the plaintiff has actually been put to, is also a fair ground of damages.

It is said, however, here, that the plaintiff has not been evicted, and so he cannot recover upon the covenants of warranty.

The facts alleged in this count show, that the plaintiff, being in possession of the granted premises, an action of trespass was brought against him, by a person claiming title; that the title of the plaintiff, then defendant, was distinctly put in issue, and a verdict found against him, and a judgment rendered; upon which, the plaintiff in that suit took possession of the premises. We see not why this is not a legal eviction; and the party who was found not to have title, was no more bound to wait for an action of ejectment, than after the termination of such action, he was bound to wait for the sheriff to turn him out of possession. In another case, the verdict of the jury has settled the question of title. When the plaintiff in that suit has got possession under, or in consequence of, such verdict, we see no reason, and we know no rule, which will require the defeated party to continue useless litigation. The law having settled the title, he need not wait for its officers to enforce the sentence; and it is not for the court to discourage a ready acquiescence in its decisions. We think, therefore,

that the plaintiff may elect to take judgment upon either covenant, upon these principles; and so we advise the superior court.

*Fairfield,*<br>June, 1841.<br>———<br>Sterling<br>*v.*<br>Peet.

In this opinion the other Judges concurred, except SHERMAN, J., who gave no opinion, having been of counsel in a former stage of this controversy.

Judgment for the plaintiff.